PHILANDER DARLING, Administrator, *vs.* BLACKSTONE MANUFACTURING COMPANY.

Upon the death of the complainant pending proceedings under the mill act, the administrator of his estate may be admitted to prosecute the complaint, and to recover such damages as he might have recovered.

On a complaint under the mill act, a release of damages from a former owner for raising the dam to a less height, or a misdescription of the land in the complaint, must be pleaded and tried in court before the issuing of a warrant, and cannot be given in evidence in mitigation of damages at the trial before a sheriff's jury.

COMPLAINT under the Rev. Sts. *c.* 116. Before a warrant. issued for a jury, the complainant died, and the court of common pleas, on motion, allowed the administrator of her estate

to come in and prosecute the complaint, and at June term 1859 accepted the verdict of a sheriff's jury for the complainant, and the respondents appealed.   The case is stated in the opinion.

*B. F. Thomas,* for the respondents.

*G. F. Hoar,* for the complainant.

CHAPMAN, J.   Hannah Young, the complainant, having deceased before the issuing of the warrant, the complaint is prosecuted by her administrator, and it is contended that nothing can now be recovered but the damages occasioned by the flowing preceding her death.   For as the land descends to her heirs at law upon her death, so it is said the claim for the damage done since her decease vests in them as incident to the land, and the administrator has nothing to do with it.   It is said to be analogous to the case of a sale of the land flowed, before filing the complaint; in which case the grantor may maintain the process to recover the damages up to the time of his alienation, and for nothing more.   *Walker* v. *Oxford Woollen Manuf. Co.* 10 Met. 203.   It is also urged that many inconveniences will arise from allowing the administrator to prosecute the claim for subsequent damages, and to make the election in respect to gross damages.   There is much force in some of these objections.

On the other hand, it is urged that the statute contains an unrestricted provision that the administrator may prosecute the suit, and many inconveniences are suggested that would arise from the restriction contended for by the respondents.   Some of them are very great.

As the statute does not furnish an express guide, and as there are strong arguments *ab inconvenienti* on both sides, we have endeavored to conform to its spirit.   Its object in taking away the common law remedy, as it does in all cases, (*Charles* v. *Monson & Brimfield Manuf. Co.* 17 Pick. 70,) and substituting a complicated process in its stead, is to enable the parties to settle all the various questions, that may arise out of an act of flowing, by a single process, so far as this can possibly be done. The legislature has regarded the water power of our streams as *publici juris;* and it is for this reason that it subjects the interests of agriculture to it, and authorizes mill-owners to flow

the meadows above them to such extent as it deems advisable, for the purpose of obtaining power to carry on business that is in its nature strictly private, as the manufacture of cloth, or machinery. It not only authorizes the flowing of meadow lands to raise the necessary head of water, but to provide reservoirs so that the mill-owner may avail himself of all the water of the stream to the best possible advantage. On any other principle it would be difficult to sustain the constitutionality of our mill acts. Undoubtedly this policy has done much to increase the population and wealth of the State.

In the present case, we think all the questions may be settled consistently with the rights of all parties. The process may be carried on in the name of the administrator for his own benefit, so far as he is entitled to the proceeds; and for the benefit of the heirs, so far as they are entitled to them. It is no novel thing in our courts that the name of one party is used for the benefit of others. In such cases the rights of interested parties are protected, and they are in some cases allowed to control the suits so that the admissions of the party to the record, or his discharge or other act injurious to their interests, shall have no validity.

It must be most favorable to the mill-owner to have his rights and liabilities determined in a single suit, rather than be subjected to two or more suits, and this is in conformity to the policy of the statute. An argument of some force in favor of this construction of the statute arises from the fact that the claim for damages is not a right or easement in land to be conveyed in writing, nor does it run with the land; but it may be released or waived by parol. *Seymour* v. *Carter*, 2 Met. 520. *Smith* v. *Goulding*, 6 Cush. 154.

It is next contended that evidence ought to have been admitted before the sheriff's jury that the dam of the respondents was raised to a designated point by the Blackstone Canal Company; that a former owner of the premises received and released the damages caused by such erection; and that the rights of the Blackstone Canal Company had been acquired by the respondents. This point has already been determined

adversely to the respondents. *Howard* v. *Proprietors of Locks &*
*Canals*, 12 Cush. 259. All matters of right should be pleaded
in court, and determined before the warrant issues. The object
of this precept is to have a jury summoned for the mere purpose
of assessing damages, and determining the other questions de-
signated by statute. They are to find the damages for the acts
which the warrant sets forth, and decide the other questions
which it specifies, and do nothing more.

So if the complaint describes more land than the complain-
ant owns, the matter should be pleaded and determined in court,
in order that the warrant may describe the land correctly ; for
the description in the warrant must be the guide to the jury.
The only evidence in respect to title which they can properly
hear is that which identifies the boundaries described in the
warrant, so that they may find the tract which is to be the sub-
ject of their consideration. The evidence offered to show that
Mrs. Young did not own a portion of the land described was
for this reason properly rejected. *Judgment affirmed.*